UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAUREL KRISTEN EVANS,
Plaintiff,
v.
CLIFTON J. LURKIS, et al.,
Defendants.

Case No. 26-cv-04352-WHO

**ORDER ON MOTIONS TO DISMISS**

Re: Dkt. Nos. 35, 36

Plaintiff Laurel Kristen Evans ("Evans") alleges that two law firms and their attorneys—Madigan & Lewis LLP (together with attorneys Kimberly A. Madigan and Victoria K. Lewis, the "M&L Defendants") and Lurkis Joyce & Del Bove LLP (together with attorney Clifton J. Lurkis, the "Lurkis Defendants")—violated their professional obligations by rendering incorrect or fraudulent legal services in an underlying child custody proceeding. The M&L and Lurkis Defendants both move to dismiss Evans's claims as barred by the statute of limitations, as well as being improperly pleaded. For the reasons set forth below, the motion to dismiss is GRANTED as to the M&L Defendants and DENIED as to the Lurkis Defendants.

## BACKGROUND

The facts underlying this dispute are lengthy and concern "two connected layers of attorney misconduct in a California child-support and custody matter." First Amended Complaint ("FAC") [Dkt. No. 26] ¶ 1. I present only those facts necessary to resolve the underlying disputes and accept all allegations in the FAC as true. *See Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002).

### I. Allegations Against Madigan & Lewis

Evans alleges that she retained defendant Madigan & Lewis, through attorney McCormick

United States District Court
Northern District of California

(together, the "M&L Defendants"), as counsel on December 3, 2019 to represent her in "post-judgment child-support issues against her former spouse . . . in a situation involving significant disputed income and discovery needs." *Id.* ¶ 19. After eight months of unsuccessful negotiations with her spouse, McCormick indicated to Evans that to obtain the spouse's disputed financial records, she would need to go to trial to obtain subpoena powers, which would cost her approximately $100,000 to $125,000. *Id.* ¶ 25. McCormick advised Evans not to go to trial and "presented [her] with no other options." *Id.* ¶¶ 25–26. Evans then asked about "the only other path known to her": Department of Child Support Services ("DCSS") proceedings. *Id.* ¶ 27. Evans "would not have proposed DCSS had she known of any other path." *Id.*

McCormick indicated to Evans that she would research whether it would be viable "for us" to proceed through DCSS, which could be a "lower cost" but lengthier alternative to trial. *Id.* ¶ 28. McCormick also represented that "we can always get the disclosures from DCSS and go back to family court if we don't like the outcome" of the proceedings. *Id.* ¶ 29. Evans took these statements to mean that the "DCSS path was safe, reversible, and not rights-foreclosing." *Id.* In reality, Evans notes that the "DCSS is a . . . support-collection agency, not [her] advocate; that the forum afforded [her] no meaningful discovery or subpoena tools of her own to test complex income; and that third parties whose property might shield income could not be reached there by [her]." *Id.* ¶ 28.

In late December 2020, Evans informed McCormick that she intended to proceed through DCSS. *Id.* ¶ 34. Evans opened her case on December 31, 2020. *Id.* Days later, McCormick indicated for the first time that she "would not be allowed to represent" Evans, as individuals were "not allowed to have representation through DCSS," and that Evans would therefore have to release her and Madigan & Lewis as counsel. *Id.* Evans alleges that she was shocked by the decision, as "McCormick had [previously] spoken of the DCSS path in the first-person plural." *Id.* ¶ 35. Moreover, Evans maintains that this claim was false, and that litigants *may* be represented by counsel of record in DCSS child-support proceedings. *Id.* ¶ 37.

"To soften the required release and preserve [her] trust," McCormick assured Evans that "she would continue to advise [her] 'quietly' from the side." *Id.* ¶ 38. In December 2021 and

January 2021, McCormick worked with "Mr. Potter," a DCSS attorney, to facilitate the handoff of Evans to DCSS. *Id.* ¶¶ 31, 39. The transition was executed in January 2021. *Id.* ¶ 43. During the execution period, counsel for the ex-spouse emailed McCormick asking to speak with her about "the Evans matter where you represent Kristen." *Id.* Evans believes that this correspondence "placed in the firm's hands, in writing, a fact fatal to the story it had told its client: the opponent Plaintiff was being sent to face alone had private counsel actively engaged in the very matter being handed to DCSS." *Id.*

Evans alleges that the M&L Defendants failed to disclose this development and did not "pause the release, . . . revisit the representation, [or] tell its client what it now knew." *Id.* ¶ 44. Instead, McCormick reaffirmed to Evans on January 4, 2021, that DCSS "will be the most effective, cost-efficient avenue" and conditioned the parties' closing letter on her proceeding through DCSS. *Id.* ¶ 45. McCormick also confirmed to Evans that she would "respond to [the ex-spouse's] attorney and tell her that [she was] no longer [her] attorney[] of record." *Id.* The firm's closing letter was issued on January 22, 2021. *Id.* ¶ 46.

On January 7, 2021, the Marin County Department of Child Support Services wrote to McCormick, indicating that Evans "recently requested [their] services via [their] online website," and that Evans "state[d] [McCormick was] representing her." *Id.* ¶ 48. They also provided McCormick with an Attorney Authorization form, which would "inform[] DCSS whether or not [McCormick] allow direct communication between [their] department and [Evans]." *Id.* McCormick did not complete the form or correct her previous representations to Evans. *Id.* ¶ 49.

Later, in mid-November 2021, after her ex-spouse threatened and harassed their daughter's psychiatrist, McCormick "advised [Evans] at length regarding the episode and her options." *Id.* ¶ 52. Evans did not understand that McCormick was not functioning as her attorney. *Id.* ¶ 53.

McCormick continued to provide advice to Evans about discovery issues as the DSCC case proceeded in 2022, as she "knew [Evans] was struggling." *Id.* ¶ 54. During the parties' first hearing in May 2022, Evans learned that her ex-spouse was appearing with private counsel. *Id.* ¶ 55. Evans asked McCormick to "step back in" as her counsel, which she denied. *Id.* ¶ 56. Instead, McCormick entered an advisory retainer to "consult" Evans on the proceedings. *Id.* On

August 12, 2022, McCormick "supplied substantive litigation strategy for the DCSS proceeding," which Evans believes definitively placed McCormick on notice that her ex-spouse was represented in these proceedings. *Id.* ¶ 61.

On September 22, 2022, following a hearing in which Evans appeared alone, the DCSS issued its support order. *Id.* ¶ 65. The order found that the ex-spouse's disputed assets were his new wife's separate property, which reduced her ex-spouse's earning capacity and accordingly reduced Evans's child support by approximately thirty percent. *Id.* ¶ 66. Evans refused to sign prior to discussing the order with McCormick. *Id.* ¶ 65. She "repeatedly attempted to reach McCormick by telephone to understand what could be done to prevent the order from becoming permanent and to preserve her ability to challenge it." *Id.* ¶ 68. None of her calls were returned. *Id.*

On October 19, 2022, M&L Defendants finally responded to Evans by closing her file. *Id.* ¶ 69. The letter sent to Evans indicated that "so much time has passed" since the firm's last contact with her, citing August 30, 2022, as the final point of contact. *Id.* The letter "said nothing about [Evans's] rights: nothing about whether or how the order could be challenged, nothing about any deadline, nothing about options, and nothing about the perils of the moment at which the firm was exiting." *Id.* Evans emailed McCormick on October 28, 2022, stating that she "understood from [her] that [she] would have the opportunity to have this heard in family court if [she] didn't agree with [the] decision," and asked what, if anything, she could do to "ensure this can be heard in a more appropriate setting." *Id.* ¶ 71. McCormick did not respond. *Id.*

Evans reached out again to McCormick on April 6, 2023, the day the family court amended its 2022 order in connection with additional bonus calculations performed. *Id.* ¶ 75. Evans asked, "I want to have my case heard in a real court with legal representation. Are you able to pick this back up?" *Id.* ¶ 75. While McCormick did not respond, Madigan "replied and refused, citing the October 19, 2022 closure [letter]: the firm had closed its file, considered the engagement concluded, and was not available to advise [Evans]." *Id.* ¶ 76.

## II. Allegations Against Lurkis Defendants

While DCSS proceeded with calculating child support, Evans discovered new financial



United States District Court
Northern District of California

records that purportedly supported her belief that her former spouse lied about his true income. *Id.* ¶ 74. Accordingly, Evans retained the Lurkis Defendants in July 2023 "to challenge or obtain relief from the . . . 2022 order and to pursue remedies supported by [this] newly discovered evidence." *Id.* ¶ 79. While the "immediate object of the engagement was a pending hearing . . . on the ex-spouse's motion opposing DCSS's bonus-support calculation for 2022," *id.* ¶ 80, Lurkis "delayed the matter repeatedly – approximately five continuances attributable to his schedule." *Id.* ¶ 84.

On November 6, 2023, Lurkis drafted a stipulation for Evans and her ex-spouse agreeing that no money would be owed for 2022 child-support payments. *Id.* ¶ 92. Evans signed a stipulation and attended the DCSS hearing regarding the 2022 support order on November 9, 2023. *Id.* ¶ 93. Lurkis "informed [Evans] only minutes beforehand that she was required to appear; . . . appeared unprepared; and . . . failed to pursue the unreimbursed medical expenses he had specifically promised to address." *Id.* Lurkis "likewise failed to object to or protect [Evans] from coercive conditions articulated in open court: opposing counsel conditioned non-enforcement of support obligations against [Evans] on her agreement to forgo future litigation. And the custodial arrangement flipped: the ex-spouse thereafter had full custody of the parties' son, and [Evans] – who could not afford to exercise her custodial rights in California because of the very under-support at issue – faced an unaffordable support obligation computed on the 2022 order's false income findings." *Id.* ¶ 94.

Opposing counsel drafted the order memorializing the outcome of the hearing. *Id.* ¶ 95. Evans alleges that Lurkis "never independently reviewed it against what had occurred in court" and pointed out that "every page of the filed order carries the recycled footer of an unrelated document from opposing counsel's files." *Id.*

On November 17, 2023, Lurkis wrote to Evans:

> Again, I wish there was more I could have done to help you. And, as I stated, should you wind up having a substantial timeshare with [the parties' son], we can open up the door as to [the ex-spouse's] actual income. Until then, take care and best of luck.

*Id.* ¶ 96. Evans maintains that this advice was false, as her "rights did not depend on her residence

United States District Court
Northern District of California

or on pre-existing timeshare." *Id.* ¶ 97. Evans emailed Lurkis on November 27, 2023, highlighting "his failures in real time – including that in seven months he had not found time to consult opposing counsel about the prior proceedings, that she had 'wasted countless hours, 7 months, thousands of dollars,' and that she had been 'completely blown off' for the 'biggest case' of his life." *Id.* ¶ 98.

Nonetheless, Evans continued to seek Lurkis's help. In February 2024, Evans asked if he was "able to help with this now?" in connection with unresolved issues with medical expenses. *Id.* ¶ 100. She again emailed Lurkis on November 4, 2024, asking Lurkis if he would be able to help her, and if not, then she would look for someone else to represent her. *Id.* Lurkis did not respond to these emails. *Id.* "Despite his nonresponsiveness, Lurkis remained [Evans's] attorney of record in the Underlying Matter" until October 2025, when Evans substituted Lurkis out. *Id.* ¶ 102.

**III. Discovery of Allegations**

In late February 2025, in a "chance conversation, a third-party attorney told [Evans] that the advice she had received from Lurkis was wrong: nothing had changed about her right to relief; her rights had remained exactly as they had always been; she could transfer the case, reopen support from out of state, and seek need-based fees to make the litigation possible." *Id.* ¶ 103. Evans maintains that this was the "first time [she] learned that Lurkis's stand-down advice was not merely the product of distraction but was substantively false." *Id.* Evans then "initiated proceedings pro se to transfer venue and pursue relief" in March 2025. *Id.* ¶ 104.

While preparing for the reopened proceedings in April 2025, Evans contacted M&L "for a benign purpose: her complete client file and information to support her anticipated request for need-based legal fees." *Id.* ¶ 105. Because her file was "incomplete," Evans asked whether McCormick could "prepare a short statement explaining why [Evans] had shifted the case to DCSS." *Id.* ¶ 106. McCormick responded, "Unfortunately, this isn't something we can accommodate," and referred her to "the correspondence folder and billing statements . . . [which] should assist [her] in substantiating what it appears [she was] trying to prove." *Id.* Evans tried to call McCormick, but she did not respond; instead, Madigan answered and indicated that the firm

was "not available to give [her] legal advice." *Id.*

On August 17, 2025, Evans uncovered additional evidence suggesting substantial concealed income existed. *Id.* ¶ 113. She concedes that she "pursued set-aside and related relief under Family Code § 3691 and related authorities" while this case proceeded in San Mateo County Superior Court. *Id.* ¶ 114. That court denied her request to set aside the support order on May 1, 2026. *Id.* ¶¶ 114–16.

**IV. Procedural History**

Evans originally filed this complaint in San Mateo County Superior Court on March 10, 2026. *See* Dkt. No. 1-4. The M&L Defendants removed the case on diversity grounds on May 11, 2026. *See* Dkt. No. 1-1. Evans moved to remand the case back to state court on June 10, 2026, *see* Dkt. No. 6. The M&L Defendants then moved to dismiss the complaint on June 24, 2026, *see* Dkt. No. 14, which was rendered moot by Evans filing her amended complaint on July 8, 2026. *See* FAC. After the case was reassigned, I denied Evans's motion to remand, finding there to be adequate diversity jurisdiction. *See* Dkt. No. 34.

Both the M&L Defendants and Lurkis Defendants moved to dismiss the FAC on August 28, 2026, and August 31, 2026, respectively. *See* M&L Mot. [Dkt. No. 35]; Lurkis Mot. [Dkt. No. 36]. Evans filed her oppositions on September 11, 2026, and September 14, 2026. *See* M&L Oppo. [Dkt. No. 42]; Laurel Oppo. [Dkt. No. 43]. Defendants responded on September 18, 2026, *see* M&L Repl. [Dkt. No. 46], and September 21, 2026, *see* Lurkis Repl. [Dkt. No. 47]. I heard oral argument on October 14, 2026.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

United States District Court
Northern District of California

While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

## I. M&L Defendants' Motion

Evans raises three causes of action against the M&L Defendants: (1) actual fraud – intentional misrepresentation, in violation of California Civil Code Sections 1709–10, *see* FAC ¶¶ 136–43; (2) actual fraud – fraudulent concealment, in violation of California Civil Code Sections 1709 and 1710(3), *id.* ¶¶ 144–49; and (3) breach of fiduciary duty and constructive fraud, *see id.* ¶¶ 150–153. The M&L Defendants move to dismiss on three grounds. They first argue that California's statute of limitations bar Evans's claims. *See* M&L Mot. at 12–20. They also assert that even if her claims were timely, Evans has not met the pleading requirements for fraud under Rule 9(b). *See id.* at 20–25. Finally, the M&L Defendants argue that Evans's alleged damages claims are unrecoverable as a matter of law. *Id.* at 25–29. I address each issue below.

### A. Statute of Limitations

#### 1. Fraud-Based Claims (Counts I and II)

The parties first dispute whether a one-year or three-year statute of limitations period

applies to Evans's fraud-based claims. Typically, claims arising out of a legal professional's misconduct are subject to a one-year statute of limitations period, subject to five enumerated exceptions that toll this period:

> (1) The plaintiff has not sustained actual injury.
> (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.
> (3) The attorney willfully conceals the facts constituting the wrongful act or omission when those facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.
> (4) The plaintiff is under a legal or physical disability that restricts the plaintiff's ability to commence legal action.
> (5) A dispute between the lawyer and client concerning fees, costs, or both is pending resolution under Article 13 (commencing with Section 6200) of Chapter 4 of Division 3 of the Business and Professions Code. . . .

*See* Cal. Civ. Proc. Code § 340.6(a). The California Supreme Court has clarified that an additional exception exists to this rule if the "plaintiff alleges actual fraud," which is governed by a three-year statute of limitations period. *Lee v. Hanley*, 61 Cal. 4th 1225, 1229 (2015); *see* Cal. Civ. Proc. Code § 338(d).

The M&L Defendants maintain that Evans's claims all sound in negligence and are improperly repackaged as fraud to extend the statute of limitations period to three years. M&L Mot. at 12. With respect to Count I, alleging that the M&L Defendants falsely represented to Evans that she could not have outside counsel in DCSS proceedings, the M&L Defendants note that the FAC recognizes they "consulted . . . experienced family-law attorneys and a DCSS attorney" before rendering any legal advice to Evans. M&L Mot. at 13 (citing FAC ¶¶ 31–32). In their view, even if their advice was incorrect, the fact that they sought outside counsel on the issue shows that their representations were "made without willful intent" and were at most "a mistake." *Id.*

Similarly, Count II alleges that the M&L Defendants "concealed and suppressed material facts" about Evans's case, including the existence of alternatives; the "true character and limitations of the DCSS forum for a complex-income case;" the fact that private counsel was permitted in DCSS proceedings; her rights and options after the September 22, 2022, order was entered; and the "true reason" for the October 19, 2022, closure letter from M&L. FAC ¶ 146.

The M&L Defendants argue that these claims similarly sound in negligence, rather than fraud. M&L Mot. at 13. Even if the three-year statute of limitations period applied, the M&L Defendants maintain that Evans's claims would still be time-barred, as she was made aware of each of these representations by at least late 2022, but brought her case in 2026. *Id.*

Evans concedes that the clock may have started as early as May 2022 for certain representations made by the M&L Defendants, such as that private counsel could not appear at DCSS proceedings. M&L Oppo. at 12–13. But she argues that the M&L Defendants cannot rely on that one issue to conclude that she discovered *every other* allegation relating to her claims. *Id.* For example, Evans notes that in her first cause of action, the FAC "alleges a separate conditional promise concerning future performance and post-order conduct that allegedly impaired contemporaneous challenge and preservation opportunities," accusations distinct from the "legal falsity of the no-counsel statement." *Id.* Evans similarly notes that Count II focuses on independent conduct, including the M&L Defendants' failure to "close[] the engagement without disclosing time-sensitive challenge or preservation options," "answer Plaintiff's October 28 request for direction," or address her request to "implement the promised course" should she disagree with the outcome of the DCSS proceedings—each independent from their purported failure to provide correct legal advice on outside counsel. *Id.* at 13 (citing FAC ¶¶ 68–77, 146(d)–(e)). Given these differences, Evans insists that I go "omission by omission" to determine whether the statute of limitations bars each of her claims. *Id.* at 13–17 (discussing the "competing inferences about discovery" that Evans believes should not be resolved at the pleadings stage).

Evans's allegations do not support her fraud-based claims. But even if they did, construing all facts in favor of Evans and taking each cause of action "omission by omission," a reasonable individual would have had a "suspicion of wrongdoing, and therefore an incentive to sue," by 2022. *Doughtery v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1243 (E.D. Cal. 2016). While Evans insists that she did not discover the purported fraud until 2025, her complaint does not plausibly suggest how "the basis of [her] claim could not have been discovered earlier, even in the exercise of reasonable diligence." *Id.* To the contrary, the facts alleged suggest that Evans should have been suspicious of the M&L Defendants' legal advice as soon as she discovered her ex-

spouse was represented in the DCSS proceedings in May 2022, as well as when the M&L Defendants failed to follow through with their promise to address any concerns she had with the outcome of the DCSS proceedings. *See* FAC ¶ 55. Accordingly, Evans's fraud-based theories are barred under both the one- and three-year statute of limitations periods. Counts I and II are DISMISSED against the M&L Defendants.

**2. Breach of Fiduciary Duty (Count III)**

Count III of the FAC asserts that the M&L Defendants breached their duties of loyalty and candor by:

> [E]ngineering their exit from a matter whose economics had become apparent, by misrepresenting the client's rights; concealing material alternatives and forum limitations; maintaining an informal advisory channel that preserved the client's trust while avoiding re-attachment; abandoning their client, unanswered, through the post-order challenge window; timing and pretexting the closure; and refusing the promised path back.

FAC ¶ 152. The FAC maintains that the "gravamen of this cause of action is intentional, fraudulent disloyalty – not professional negligence." *Id.*

The M&L Defendants argue that "California courts have long held that breach of fiduciary duty, when predicated on an attorney's provision of legal services, as is true here, are subject to one-year statute of limitations period" under Section 340.6. M&L Mot. at 15 (citing *Stoll v. Superior Court*, 9 Cal. App. 4th 1362, 1366–68 (1992) ("because much attorney malpractice may be considered a fiduciary breach," applying a longer statute of limitations period than Section 340.6 would "disregard the intent of the Legislature" and "reinstate a lengthy limitations period"). I agree that a one-year limitations period applies here. Like the fraud-based claims described in Section I.A.1, *supra*, each of Evans's allegations relate to her suspicion that the M&L Defendants' failed to provide accurate legal information or preserve her rights to challenge the support order. *See* FAC ¶ 152. Evans had at least reasonable knowledge of these issues in May 2022 (when she discovered her ex-spouse represented in DCSS proceedings) and October 2022 (when she "immediately sought replacement counsel" after the M&L Defendants refused to assist her with challenging the support order). Her claims are barred under the statute of limitations.

Neither of the two applicable bases for tolling the one-year limitation period—actual injury



United States District Court
Northern District of California

and continuous representation—warrant tolling. For actual injury, courts are required not to perform a "bright line" analysis but instead rely on "the particular facts of each case." *Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 764 (1998). "A plaintiff need not suffer a *complete* loss of a right or reach final adjudication of an issue to sustain actual injury." *Village Nurseries v. Greenbaum*, 101 Cal. App. 4th 26, 42 (2002) (emphasis in original). Here, Evans expressly recognizes that the "September 22 [support order] was appreciable injury," one "through which every category of harm alleged [in the FAC] flows." M&L Oppo. at 12; FAC ¶ 119. Because Evans has not identified any basis for tolling the statute of limitations beyond the M&L Defendants' decision to withdraw as counsel in October 2022, the actual injury rule does not provide a basis for tolling.

The continuous representation provision also does not support tolling. The continuous representation exception "was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.'" *Laird v. Blacker*, 2 Cal. 4th 606, 618 (1992) (quoting Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977–78 Reg. Sess.) as amended May 17, 1977, p. 3)). Here, the FAC alleges that the attorney-client relationship between Evans and M&L terminated on October 19, 2022. FAC ¶¶ 68–69. Evans provides no other facts that would reasonably indicate any informal continuation of the attorney-client relationship, meaning her complaint had to be filed by October 2023 to be timely. Evans filed this case in 2026. Accordingly, the continuous representation provision does not save her fiduciary duty claims. Count III is DISMISSED against the M&L Defendants.

**B. Rule 9(b)**

Even if Evans's claims were not barred by the statute of limitations, Counts I and II are improperly pleaded under Rule 9(b). To state a claim for fraud, "a party must state with particularity the circumstances constituting fraud," and the allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d

1120, 1124 (9th Cir. 2009) (citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). But "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be plead[ed] generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (emphasis omitted).

Count I asserts that the M&L Defendants made various "false representations of material fact to Plaintiff," including that Evans was not allowed private representation in DCSS proceedings; that the DCSS could "handle[] everything," including obtaining the financial disclosures that the ex-spouse refused to provide; that the DCSS path was "reversible;" and that trial was the only alternative option. FAC ¶ 137. Similar allegations are raised as to Count II. *See id.* ¶ 146 (describing how the M&L Defendants "concealed and suppressed" material facts from Evans).

While I agree with Evans that the complaint adequately explains the "who" (the M&L Defendants and its individual attorneys, including McCormick), "what" (the statements made above), "where," and "when," it is unclear "how" the M&L Defendants' conduct amounts to fraud. *See Vess*, 317 F.3d at 1106. Although the FAC alleges that the M&L Defendants' conduct was fraudulent because the firm "said nothing" to Evans despite knowing their interpretation of the law was incorrect, the alleged misrepresentation—that an unfavorable DCSS support determination could later be challenged or reversed—was not false. Truthful statements do not form a basis for allegations of fraud. *See Gagne v. Bertran*, 43 Cal. 2d 481, 487 (1954); M&L Mot. at 20–22. Moreover, nothing in the complaint "set[s] forth facts from which an inference of scienter could be drawn," as required to be alleged. *Cooper v. Pickett*, 137 F.3d 616, 628 (9th Cir. 1997). Finally, Evans acknowledges in her complaint that prior to May 15, 2025, she had understood McCormick's representations to be a result of "error, not design." FAC ¶ 108. While Evans changed course after her purported discovery of the fraud, the allegations in the complaint, taken together, do not show any fraud on the part of the M&L Defendants that would survive Rule 9(b)'s heightened requirements. Evans's failure to meet this pleading demand provides an

United States District Court
Northern District of California

independent basis for dismissal on the merits.

### C. Damages Claims

The M&L Defendants' final argument concerns Evans's claims for punitive damages and prejudgment interest. M&L Mot. at 25–29. They are moot in light of my analysis above.

## II. LURKIS DEFENDANTS' MOTION

Evans asserts two causes of action against the Lurkis Defendants: (1) professional negligence and legal malpractice, in violation of Section 340.6 of the California Code of Civil Procedure, *see* FAC ¶¶ 154–58, and (2) breach of fiduciary duty, *see id.* ¶¶ 159–62. Like the M&L Defendants, Lurkis Defendants maintain that each of these claims are barred on statute of limitations. Evans disagrees, arguing that (1) delayed discovery warrants tolling of the one-year statute of limitations, and that (2) the Lurkis Defendants provided continuous representation that would warrant tolling. I disagree with Evans as to the delayed discovery rule but agree concerning continuous representation.

### A. Delayed Discovery

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 807. Accordingly, "to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" *Id.* at 808 (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999). "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand [a motion to dismiss].'" *Id.*

The parties disagree about when Evans knew—or should have known—of the Lurkis Defendants' alleged wrongdoing. Evans maintains that the FAC alleges that she did not learn that



United States District Court
Northern District of California

"the advice she had received from Lurkis was wrong" until February 2025, when a third-party attorney suggested that "nothing had changed about her right to relief; her rights had remained exactly as they had always been; [and that] she could transfer the case, reopen support from out of state, and seek need-based fees to make the litigation possible." Oppo. at 13; FAC ¶ 103. In response, the Lurkis Defendants argue that Evans knew of all the relevant facts by November 2023, when Lurkis failed to prepare her for the DCSS hearing, "appeared unprepared," "failed to pursue the unreimbursed medical expenses he had specifically promised to address," and "failed to object or protect [her] from coercive conditions articulated in open court." Repl. at 2–3; FAC ¶¶ 93–94. They also point to the November 27, 2023, correspondence between Evans and Lurkis, in which Evans highlighted Lurkis's "failures in real time – including that in seven months he had not found time to consult opposing counsel about the prior proceedings, that she had 'wasted countless hours, 7 months, thousands of dollars,' and that she had been 'completely blown off' for the 'biggest case' of his life." FAC ¶ 98.

Evans principally relies on *McCann v. Welden*, 153 Cal. App. 3d 814 (1984), to support her position. In *McCann*, the California Supreme Court recognized that the statute of limitations runs when the wrongful acts forming the basis of the complaint were discovered, not on general dissatisfaction or discovery of related errors. *Id.* at 820–22. While Evans notes that one wrongdoing may not trigger the statute of limitations for another wrongdoing, her duty to investigate the Lurkis defendants' wrongdoing reasonably began in November 2023, when she highlighted their "failures" via correspondence. That Evans did not know that Lurkis allegedly provided incorrect legal advice until April or May 2025 does not save her claims, as the statute of limitations period is "triggered by the client's discovery of the facts constituting the wrongful act or omission, not by his discovery that such facts constitute professional negligence." *Demartini v. Johns*, 12-cv-03929-JCS, 2015 WL 12781178, at *10 (N.D. Cal. Jan. 22, 2015) (Spero, M.J.), *aff'd*, 693 F. App'x 534 (9th Cir. 2017) (quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 685 (2005)). Accordingly, because Evans had knowledge of the wrongful acts by November 2023, the delayed discovery exception does not



United States District Court
Northern District of California

apply.[1]

**B. Continuous Representation**

The Lurkis Defendants also maintain that the continuous representation exception does not save her claims from falling under the one-year statute of limitations period. They argue that it is "unquestionabl[e]" that their attorney-client relationship with Evans terminated on November 17, 2023, when Lurkis wrote to Evans:

> Again, I wish there was more I could have done to help you. And, as I stated, should you wind up having a substantial timeshare with [the parties' son], we can open up the door as to [the ex-spouse's] actual income. Until then, take care and best of luck.

FAC ¶ 96. The Lurkis Defendants take the statement "take care and best of luck," combined with their lack of response to further inquiries, as evidence that the relationship was terminated. *See* Lurkis Repl. at 6 (citing FAC ¶¶ 96, 100, 102).

In response, Evans argues that the Lurkis Defendants provided continuous representation until March 14, 2025, when she "initiated proceedings pro se to transfer venue and pursue relief." Lurkis Oppo. at 18; FAC ¶ 104. With respect to the November 17, 2023, email, Evans maintains that the "take care and best of luck" language highlighted by the Lurkis Defendants is contradicted by other representations in the email that should she obtain a "substantial timeshare" with her son, they "could open up the door" concerning the ex-spouse's income. Lurkis Oppo. at 18; FAC ¶ 96. She also notes that she followed up in February and November 2024, while conceding that Lurkis never responded to her emails. Lurkis Oppo. at 18; FAC ¶¶ 100–01. Finally, Evans notes that the Lurkis Defendants never withdrew as her attorney until Evans substituted them out in October

---

[1] The Lurkis Defendants also argue that Evans's claims are untimely because, even assuming the February 2025 discovery of the alleged errors severed as the operating date, Evans failed to timely file her complaint. The Lurkis Defendants point out that Evans filed her case in state court on March 2, 2026, which the clerk rejected on March 6 (Friday) for procedural errors. Because Evans did not resubmit until March 10 (Tuesday), the Lurkis Defendants maintain that the filing was "one day too late" and should be dismissed. Lurkis Mot. at 11–12; *see Maginn v. City of Glendale*, 72 Cal. App. 4th 1102, 1107–08 (2022) ("The clerk issued the summons on August 13, but plaintiffs failed to serve the summons and complaint until August 15. Plaintiffs thus waited two additional days after the clerk issued the summons. This additional delay is fatal to the plaintiffs' case and not excusable."). As I explain below, because it is plausible that the continuous representation exception would apply, Evans has plausibly alleged that the limitations period would extend her filing deadline to March 14, 2026, making her complaint plausibly timely.

2025. *See id.* ¶ 102. Evans urges me to rule in her favor on this issue at the pleading stage, as in her view, finding these claims to be time-barred would "require drawing the disputed inference in Defendants' favor." *See* Lurkis Oppo. at 19–20; *Wang v. Nesse*, 81 Cal. App. 5th 428, 440–48 (2022).

Construing all facts in Evans's favor, it is plausible that the attorney-client relationship continued until March 14, 2025. As Evans notes, Lurkis never withdrew as her attorney; instead, Evans had to substitute counsel in October 2025 after repeated attempts to reach out to Lurkis and seek legal advice. *See* FAC ¶ 102. While the Lurkis Defendants correctly note that the "failure to formally withdraw as attorney of record, standing alone, will not toll the statute of limitations under the rubric of continued representation," here, Lurkis's failure to withdraw, combined with his representation that "should [Evans] wind up having a substantial timeshare with [the parties' son], [they] can open up the door as to [the ex-spouse's] actual income," plausibly could suggest to a reasonable individual that the Lurkis Defendants continued representing Evans in this matter. *See Nguyen*, 49 Cal. App. 5th at 13; FAC ¶ 96. Lurkis's failure to respond to Evans's subsequent emails does not prove at the pleadings stage whether they were, in fact, her counsel on the matter—Evans reasonably could have assumed that Lurkis simply failed to respond to his client's request. This theory is at least plausibly alleged for statute of limitations purposes.

## CONCLUSION

For the reasons set forth above, the M&L Defendants' motion to dismiss is GRANTED without leave to amend, and the M&L Defendants are DISMISSED from this case. The Lurkis Defendants' motion to dismiss, by contrast, is DENIED.

**IT IS SO ORDERED.**

Dated: October 27, 2026



William H. Orrick
United States District Judge



United States District Court
Northern District of California